UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LANDING GEAR SHIPPED TO GQ SOLUTION ELECTRONICK EKIPMAN LIMITED,<br><br>Defendants In Rem. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 24-cv-1274 |

## GOVERNMENT'S MOTION FOR DEFAULT JUDGMENT

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully submits this Motion for Default Judgment in the above-captioned civil forfeiture case. More than a year has passed since the filing of this case, and no claimant has asserted an interest in the defendant property despite the government having discharged its notice obligations as fully as possible. Accordingly, a default judgment in favor of the United States should be entered.

### I.      BACKGROUND.

The relevant legal provisions and facts giving rise to this forfeiture action are documented in the government's Verified Complaint for Forfeiture *In Rem*, ECF 1. In brief summary:

#### A.      Relevant substantive law.

The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq.*, authorizes the President to impose economic sanctions in response to an unusual or extraordinary threat, which has its source in whole or substantial part outside the United States, to the national

1

security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat.

The Department of the Treasury enforces and administers economic sanctions to accomplish U.S. foreign policy and national security goals. Within the Treasury Department, the Office of Foreign Assets Control ("OFAC") publishes a publicly available list of individuals and entities ("Specially Designated Nationals and Blocked Persons" or "SDNs") targeted by U.S. economic sanctions.  SDNs' property and interests in property, subject to U.S. jurisdiction or in the possession and control of U.S. persons, are blocked when they are designated as SDNs.  U.S. persons, including U.S. financial institutions, are broadly prohibited from dealing with SDNs and their property and interests in property, subject to limited exceptions.

It is a criminal offense to willfully cause a violation of sanctions imposed pursuant to IEEPA. *See* 50 U.S.C. § 1705(a), (c). Such an offense is a "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7)(D).  Accordingly, forfeiture *in rem* of the proceeds of a criminal IEEPA violation is authorized under 18 U.S.C. § 981(a)(1)(C).

**B.      Facts giving rise to forfeiture.**

RM Design and Development LLC (hereinafter "RMDD") was a business entity based in the Kyrgyz Republic. In July of 2023, OFAC designated RMDD as subject to sanctions based on OFAC's determination that the RMDD was engaged in supplying dual-use goods to Russian firms, including firms linked to Russia's defense sector. As a result of that designation, it became unlawful for any U.S. person to transact with RMDD without first obtaining a license from OFAC.

Prior to RMDD's designation, the company had been negotiating with a U.S.-based company, HML Aviation Services LLC ("HML"), for the purchase of an aircraft landing gear. Those negotiations resulted in the creation of an invoice for the purchase of the landing gear components that are the subject of this forfeiture action. The invoice identified the "bill to" and

2

"ship to" parties as "GQ Solution Elekronik Ekipman Limited" (hereinafter "GQ Solution"), care of RMDD.

On June 13, 2023, RMDD sent an email stating that "[w]e have arranged the payment" of a deposit for the landing gear. The email included a document showing that funds had been wired from GQ Solution to HML.

On July 20, 2023, OFAC designated RMDD as an SDN. Five days later, on July 25, 2023, RMDD sent an email to HML stating that RMDD "would like to switch [the purchase] fully to our partners GQ SOLUTION." The email contained no reference to the fact that RMDD had recently become sanctioned and that it was therefore illegal for HML to do business with RMDD. The next day, GQ Solution sent HML a revised invoice that removed all references to RMDD.

HML subsequently received full payment from GQ Solution and caused the landing gear to be shipped. However, U.S. Customs and Border Patrol detained the landing gear at the Miami Airport, and this forfeiture action followed.

The above-summarized facts establish that RMDD committed a criminal violation of IEEPA when it willfully caused HML to engage in a transaction for the benefit of a sanctioned entity (i.e., HML, which maintained an interest in the transaction notwithstanding its attempts to conceal its involvement by directing that the transaction be modified to show GQ Solution as nominally the sole buyer). As the proceeds of that IEEPA violation, the landing gear is subject to forfeiture.

## II.    THE GOVERNMENT HAS SATISFIED ITS NOTICE OBLIGATIONS.

This action is governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), which apply to civil forfeiture actions *in rem* arising from a federal statute. *See* Supplemental Rule A(1)(B). The Federal Rules of Civil

Procedure also apply except to the extent they are inconsistent with the Supplemental Rules. *See* Supplemental Rule A(2). Supplemental Rule G(4) governs the process by which the government must serve notice of the complaint. Notice is required to the public via publication, and notice to potential claimants is required via direct notice. *Id.*

### A.     Publication

On July 16, 2024, the government began publication by posting notice on www.forfeiture.gov, an official internet government forfeiture site. *See* ECF 5-1. Notice was posted on this site for 30 consecutive days. Publication ended on August 15, 2024. Thus, claims based on publication were due by September 15, 2024. *See* Supp. Rule G(5)(a)(ii). No party filed a claim, and the time to do so has expired.

### B.     Direct Notice

Supplemental Rule G also requires that the government send direct notice "to any person who reasonably appears to be a potential claimant on the facts known to the government." Supp. Rule G(4)(b)(i). The notice must be sent by means "reasonably calculated to reach the potential claimant." Supp. Rule G(4)(b)(i)(A).

The government identified three potential claimants, which are addressed in turn below. All three potential claimants are foreign business entities located in foreign countries. As a general matter, the U.S. Department of Justice ("DOJ") is not authorized to take actions in foreign countries without the permission of the country's government. Consequently, serving notice on the potential claimants in this case has required the transmission of formal requests to two foreign governments pursuant to mutual legal assistance treaties, coordinated through DOJ's Office of International Affairs ("OIA").

1.  RMDD

As discussed above, RMDD was the company that initiated and negotiated the purchase of the landing gear. RMDD also sent HML confirmation of the payment by GQ Solution of a deposit for purchase of the landing gear. Accordingly, the government identified RMDD as a potential claimant. RMDD is based in Kyrgyzstan.

In February of 2025, the government was notified by Kyrgyz authorities that notice had successfully been served on the head of RMDD. The Kyrgyz authorities stated that the head of the company was interviewed on November 16, 2024, and told authorities that he opened the company at the direction of a third party and that he was not aware that the third party had ordered a landing gear on RMDD's behalf until he learned that his firm "and the [Country 1] firm through which were placing our orders" (i.e., GQ Solution) had been placed on the sanctions list. *See* Ex. 1 at 4. The owner signed a "Delivery-Acceptance Report" confirming that he received the copy of the complaint and the other documents that made up the notice. *See* Ex. 2.

The notice to RMDD imposed a deadline of 35 days after receipt for the claimant to submit a claim. That deadline has now passed. Accordingly, direct notice to RMDD has been accomplished.

2.  GQ Solution

As discussed above, GQ Solution was RMDD's co-purchaser of the landing gear, which was sold to GQ Solution care of RMDD. GQ Solution is located in Country 1.

On August 28, 2024, OIA transmitted an MLA request to Country 1 asking that Country 1's government serve notice upon GQ Solution and a second entity (addressed below). Since then, the U.S. government has received no response from Country 1, despite multiple attempts by OIA to seek a status update through multiple channels. OIA's assessment is that the Country 1 authorities are unlikely to respond in the foreseeable future.

Given Country 1's apparent inaction, the government has explored alternate means of effectuating direct service upon entities in Country 1. In particular:

- Undersigned counsel consulted OIA about the possibility of contacting GQ Solution directly using the email address used by GQ Solution in connection with the landing gear purchase. OIA's response, based on recent experience with Country 1, was that the Country 1 authorities would firmly oppose any such direct contact, viewing it as a violation of the country's sovereignty.

- Undersigned counsel also consulted OIA about the possibility of publishing notice in a Country 1 newspaper or other publication where GQ Solution would be likely to see it. OIA's response, similarly, was that such publication could not be accomplished without making a formal MLA request, and that any such request would be unlikely to be granted.

In light of the foregoing, it appears that the only means of making direct notice to a party in Country 1 is by transmitting an MLA request, the fulfillment of which depends upon the voluntary cooperation of the Country 1 authorities. Because the government has taken that step, no further notice to GQ Solution is possible, so no more should be required.

"[R]easonable notice" requires "only that the government attempt to provide actual notice; it does not require that the government demonstrate that it was successful in providing actual notice." *Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005) (citing *Dusenbery v. United States*, 534 U.S. 161, 170 (2002)); *see also United States v. Twenty-Four Cryptocurrency Accts.*, 473 F. Supp. 3d 1, 6 (D.D.C. 2020) (same); *United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, 324 F. Supp. 3d 38, 47 (D.D.C. 2018) (same). Accordingly, even when the government's reasonable efforts to make direct notice are

unsuccessful, court have deemed the notice requirement satisfied. *See, e.g.*, *United States v. Funds Up to & including the Amount of $56,634 in U.S. Currency on Deposit in Banesco Int'l, Panama, Acct. # XXXXXXXXXXX, Titled in the Name of Inversiones Cedeno C.A.*, 79 F. Supp. 3d 112, 114 (D.D.C. 2015) (notice was adequate where government attempted, but was unable, to obtain the account holders' contact information, and thus, could only rely on posting public notice of the forfeiture action on the government's forfeiture website); *Hammel v. U.S. Dep't of Justice, Drug Enf't Admin.*, No. 2:12-cv-02932, 2013 WL 1363861, at *3 (D.S.C. Apr. 3, 2013) (mailing of notice to two known addresses and subsequently gave notice by publication in a national news publication is sufficient notice); *Folks v. Drug Enf't Admin.,* No. 05–389, 2006 WL 3096687, at *2 (W.D.N.C. Oct. 25, 2006) (finding notice sufficient when, after notice sent to only address government had on file went unclaimed, because government also gave notice by publication).

Here, the government has attempted, in good faith and with all possible diligence, to make direct notice to GQ Solution. This is sufficient. *See Valderrama*, 417 F.3d at 1197 (citing *Dusenbery*, 534 U.S. at 170). To require anything more would be to ask the impossible, causing the defendant property to languish indefinitely in the custody of the United States with no means of disposal. This result would not serve the ends of justice.

Nor does fairness to GQ Solution require any further notice. Although it is unclear whether GQ Solution has actual notice of this judicial action, the business (through counsel) did receive notice of the original seizure of the landing gear by U.S. Customs and Border Patrol. Beginning in February of 2024, the government was in contact with an attorney based in the United States who represented GQ Solution in connection with the seizure. On March 22, 2024, that attorney specifically confirmed that GQ Solution was aware of the seizure, that GQ Solution would be responding directly to CBP, and that the attorney was "not at this time engaged for any further

representation on this matter." The government was never subsequently contacted by GQ Solution. Because GQ Solution knows that the property was seized, and because the barest level of diligence like a cursory internet search would have informed it of this forfeiture action (given the published notice described above as well as the U.S. government press releases that accompanied this forfeiture action and OFAC's designation of GQ Solution,[1]) there is strong reason to infer that GQ Solution is aware that the U.S. government is seeking to forfeit the property in question. *See* Supp. Rule G(4)(b)(v) ("A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice.").

Finally, it bears noting that GQ Solution is now, itself, a sanctioned entity, having been designated by OFAC on May 1, 2024, for "operating or having operated in a sector of the Russian Federation economy determined to support Russia's military-industrial base pursuant to section 11 of Executive Order 14024, as amended by Executive Order 14114."[2] Accordingly, GQ Solution would not be eligible to receive the landing gear even if it asserted a claim, and its status as a "potential claimant" is therefore not clear.

For all these reasons, the Court should find that the government has fully satisfied its notice obligations as to GQ Solution.

3.  MGA Airlines

Finally, the government also attempted to make direct notice to MGA Airlines, another business entity located in Country 1. In doing so, the government construed Supp. Rule G(4) broadly, in the interest of the widest possible dissemination of notice of this forfeiture action. MGA

---

[1] *See* https://www.justice.gov/archives/opa/pr/united-states-files-forfeiture-action-against-155-million-aircraft-landing-gear; https://home.treasury.gov/news/press-releases/jy1636.

[2] Office of Foreign Assets Control, "Russia-related Designations; Non-Proliferation Designations; Issuance of Russia-related General Licenses," May 1, 2024, *available at* https://ofac.treasury.gov/recent-actions/20240501.

Airlines does not, however, "reasonably appear to be a potential claimant" for whom notice is actually required under Supp. Rule G(4)(b).

Internal HML emails referred to MGA Airlines as the "supposed 'end user'" of the landing gear that had been purchased by RMDD and GQ Solution. An "end user," as the name suggests, is ordinarily the person or entity who will ultimately make use of a product that is sold to them through intermediaries. At most, then, MGA Airlines was a party that expected eventually to purchase the landing gear from RMDD and/or GQ Solution. There is, however, no evidence that MGA Airlines made payments or took any other action that would qualify it as a "potential claimant" in this forfeiture case.

Regardless, even if MGA Airlines were a "potential claimant," the government has satisfied Supp. Rule G(4) by making all reasonable efforts to effectuate direct notice. The government's MLA request to Country 1, discussed above, included a request for notice to MGA Airlines along with the request for notice to GQ Solution. As discussed above, that is all the government can legally do.

### III.    CONCLUSION

Upon consideration of the record in this case, including a showing of compliance with applicable rules regarding service of process and notice by publication, it is respectfully requested that this motion be granted. *See 8 Gilcrease Lane*, 638 F.3d at 299 (upholding district court's order for default judgment and final order of forfeiture, because there were no valid claims); *United States v. $9,928.00 in U.S. Currency*, 10-cv-1728, 2012 WL 1004873, at *1 (D.D.C. Mar. 27, 2012) (ordering default where government submitted affidavit certifying that it gave appropriate notice and that no claims were filed); *United States v. $4,620 in U.S. Currency*, 779 F. Supp. 2d 65, 67 (D.D.C. 2011) (ordering default where court struck sole claimant's claim, leaving no claimants to

the defendant funds). A proposed Default Judgment and Order of Forfeiture is attached to the motion.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ Conor Mulroe*
CONOR MULROE
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 740-4595
Conor.Mulroe@usdoj.gov